UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| WILLIAM D. PIERPALIO, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)REPORT AND RECOMMENDATION<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____ ) | C/A No. 4:10-2401-CMC-TER |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

The Plaintiff, William D. Pierpaoli, filed an application for DIB on January 9, 2008, and SSI on December 18, 2007, with an alleged onset date of disability of May 24, 2007. The Plaintiff requested a hearing before an administrative law judge ("ALJ") after his claims were denied initially and on reconsideration. Id. The ALJ conducted a hearing on February 24, 2010, at which the

Plaintiff and a vocational expert (VE) appeared and testified. On April 23, 2010, the ALJ issued a decision finding that the Plaintiff was not disabled. (Tr. 10-21.) In deciding that the Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since May 24, 2007, the alleged onset date. (20 CFR 404.1571, *et. seq.,* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: Status post right leg fracture with rod placement; knee pain; degenerative disc disease of the lumbar spine status post laminectomy; and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meet or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) with a sit/stand option at will. Due to his bipolar disorder and complaints of pain, the claimant is further limited to simple unskilled work with only occasional interaction with the public and co-workers and no quotas or production work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 18, 1972, and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-19).

After the Appeals Council denied the Plaintiff's request for review (Tr. 1-3), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. § 404.981. The Plaintiff filed the instant action on September 14, 2010. In his brief, the Plaintiff raises the following issues:

> 1. The Commissioner failed to establish other jobs existed in significant numbers that Pierpaoli could perform at Step 5 of the Sequential Evaluation process.
>
>    A. The ALJ failed to adequately clarify mental and postural restrictions and resolve the conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles as required by Social Security Ruling 00-4p.
>
> II. The ALJ failed to assess Pierpaoli's credibility and subjective allegations.

(Pl's Brief at 1.)

3

The Commissioner contends that the ALJ did not commit any error and urges that substantial evidence supports the determination that the Plaintiff was not disabled. Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported

by substantial evidence and if proper legal standards were applied.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the Plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## II.  FACTUAL BACKGROUND

The Plaintiff was 37 years old at the time of the hearing before the ALJ. (Tr. 25). Plaintiff has past relevant work experience as a fence installer, cabin finisher, and a maintenance technician. (Tr. 33, 166). Plaintiff alleges he became disabled on May 24, 2007, due to a broken femur as a result of an automobile accident, an ACL replacement, back pain, and bipolar disorder. (Tr. 165). The medical records were set out in detail by the ALJ and in the briefs.  Therefore, the medical reports/records will not be repeated herein.

## III. ARGUMENTS AND ANALYSIS

### A. Credibility

Plaintiff argues the ALJ failed to correctly assess his credibility and subjective allegations. Plaintiff argues that the ALJ "is mistaken that the occasional activities that he cited are not compatible with a finding that Pierpaoli is disabled. The ability to engage in some limited activity at one's own pace is not indicative of an ability to engage in full time work activity." (Plaintiff's

brief, p. 30).   Plaintiff asserts the ALJ ignored his testimony with regard to his current functioning and that the medical evidence supports his allegations of chronic, severe pain even seeking extensive treatment for his problems.

Defendant argues in response that the ALJ's evaluation of the Plaintiff's credibility was proper and based on sound reasoning. Defendant argues the ALJ identified numerous valid reasons, supported by substantial evidence, for discounting his subjective complaints. The ALJ reasonably considered inconsistencies between Plaintiff's administrative hearing testimony and his statements to treatment providers finding the inconsistencies support a finding that the impairments were not as limiting as he alleged.

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985).

> It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96–7p.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently

supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at Craig's step one that Plaintiff had impairments capable of producing the symptoms that he alleged but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment. (Tr. 15-17). Accordingly, the ALJ proceeded to step two. It is here that the ALJ takes issue with claimant's allegations about his pain. Regarding the Plaintiff's credibility, the ALJ made these findings:

> Although the claimant testified that his condition was worsening, the evidence reveals that the claimant was making slow, but steady progress. While the claimant alleged extreme inactivity (sleeping all day), a review of the evidence of record fails to reveal any signs of muscular atrophy or similar findings. Although the claimant alleged significant side effects from the use of medications (sleeping all d ay), the medical records, such as office treatment notes, do not corroborate those allegations. While the claimant testified that his pain was generally a ten on a scale of one to ten, the medical record reveals evidence to the contrary. In December 2008, he rated his pain as a one to two out of ten; on March 4, 2009, it was a one to two out of ten; March 9, 2009, it was four out of 10; March 26, 2009, it was a one out of ten; in June 2009, it was two to five out of ten; and in July 2009, it was two out of ten. At most, he rated his pain as an eight out of ten on one occasion in September 2009. Therefore, I have determined that some of the testimony at the hearing is inconsistent with the treatment records.
>
> There is evidence of non-compliance in the record. Treatment records from various sources reveal that the claimant continued to smoke, at

7

> least through May 2008, despite the directions from his physicians to
> discontinue and despite the negative impact it could have upon his
> health.
>
> Despite the allegations of severe functional limitations, the evidence
> of record reveals that the claimant has retained a significant range of
> activities of daily living. Although the claimant testified that he was
> unable to drive or do household chores, it was reported in January
> 2008 and July 2008 that the claimant was able to drive on occasion.
> Additionally, in October 2008, the claimant reported that he was able
> to perform some household chores and cook on occasion. (Exhibit
> 18F). Moreover, the record reveals that the claimant was able to
> attend to his personal care. (Exhibits 11E, 12E). These instances
> indicate that the claimant's physical functioning has, at least at times,
> been somewhat greater than the claimant has generally reported and
> are inconsistent with complaints of disabling functional limitations.

(Tr. 12-13).

The ALJ went on to set out and discuss Plaintiff's medical records in support of his credibility determination. The ALJ concluded that even though Plaintiff had the medically determinable impairments that could reasonably be expected to cause the alleged symptoms, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects the symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment determined by the ALJ. Based on the evidence before the ALJ at the time of the hearing, the undersigned concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible.[1]

---

[1] The court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

**B.  OTHER JOBS**

Regarding the analysis at step 5 in the sequential analysis, Plaintiff raises the following issue: "The ALJ failed to adequately clarify mental and postural restrictions and resolve the conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles as required by Social Security Ruling 00-4p." (Pl's brief at 1). Specifically, Plaintiff asserts that the VE testified that three occupations which Plaintiff could perform in compliance with his RFC were consistent with the DOT except for the sit/stand option "at will."  Plaintiff argues there was no testimony by him with regard to the frequency of the need to change position, and the question was never asked of him. Thus, Plaintiff argues, the record is void as to the frequency of the need to sit/stand. Additionally, Plaintiff argues the VE did not "actually explain the contradiction with the DOT as required by the ruling" but merely concluded his testimony with the statement that "the sit/stand option is based on my professional observance." (Plaintiff's brief, p. 19). Therefore, Plaintiff argues the case must be remanded for the ALJ to obtain the specific restrictions of the sit/stand limitation, to obtain testimony from the VE explaining upon what basis his testimony is supported, and for the ALJ to include specific restrictions in the hypothetical question.

Defendant responds that the ALJ's hypothetical to the VE was sufficient with regard to the sit or stand option at will. Further, Defendant responds that with regard to Plaintiff's argument that the VE's testimony conflicted with the DOT in regard to the at-will sit/stand option, the DOT does not address sit/stand options so there was no conflict. (Defendant's brief, p. 15-16). Lastly, Defendant responds that the ALJ's hypothetical to the VE accounted for all of Plaintiff's credible limitations.

The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). If the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work, considering the claimant's RFC, age, education, and past work experience.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

First, Plaintiff asserts that while the ALJ gave a sit/stand at will option to the VE, there was no evidence as to the frequency of his need to alternate positions, and the question was not posed to him. Plaintiff asserts that SSR 96-9p [2] requires the RFC assessment to be specific as to the frequency of the person's need to alternate sitting and standing.

In the instant case, the ALJ asked the VE about the work prospects of a hypothetical individual who is "limited to sedentary work with an option to sit or stand at will." (Tr. 33). The VE testified to several jobs that exist that such a person could perform. (Tr. 33-34). Even though the ALJ did not specify the frequency of the need to change Plaintiff's sit/stand position, "the reasonable implication of the ALJ's description was that the sit/stand option would be at [Plaintiff's] own volition. This implication satisfies [Plaintiff's] needs." Robinson v. Astrue, 2011 WL 5402408 (Nov. 8, 2011, E.D.Ark) *quoting* Williams v. Barnhart, 140 Fed. Appx. 932, 936-37 (11th Cir. 2005). See also Foster v. Astrue, 2009 WL 4757239, *2 (M.D. Fla. Dec. 10, 2009) ("A common sense reading of the ALJ's RFC finding and hypothetical question to the vocational expert is that the ALJ contemplated a sit/stand option at will[.]"); Younger v. U.S. Com'r of Soc. Sec., 2009 WL 2827945, *12 (W.D. La. Sept. 1, 2009)("since the ALJ failed to specify a frequency, it is assumed that the 'sit/stand' option given by the ALJ was implicitly 'as need' or 'at will.'"); Walls v. Barnhart, 296

---

[2] The purpose of SSR 96–9p is "[t]o explain the Social Security Administration's policies regarding the impact of a[n][RFC] assessment for less than a full range of sedentary work on an individual's ability to do other work." SSR 96–9p (emphasis added). Moreover, the ruling's introduction explains that once it has been determined that a claimant is not engaging in substantial gainful activity (Step One), has a severe medically determinable impairment (Step Two), which does not meet or equal the criteria of a listing (Step Three) but prevents an individual from performing past relevant work (Step Four), "it must be determined whether the individual can do any other work." Id. The ruling specifies how the occupational base is impacted when a claimant is unable to perform a full range of sedentary work and it enumerates exertional limitations, including a sit-stand requirement, that can erode the occupational base. Id.

F.3d 287, 290-292 (4th Cir. 2002)(the Court held it was "clear that the VE knew he was responding to the ALJ's instruction to provide for ...sit/stand option at the claimant's discretion," and "A special clarity criterion would require the agency to support its decisions by more than the statutorily designated substantial evidence burden."). No greater specificity is required. *Cf*. Thompson v. Astrue, 2011 WL 3489671, (4th Cir. Aug. 10, 2011) (at step four, the residual functional capacity finding and hypothetical "were consistent with an at-will, sit-stand option, and we find that no greater specificity was required.")

Further, as to Plaintiff's argument that the testimony of the VE and the DOT were inconsistent for which the ALJ failed to resolve pursuant to SSR 00-4p, the argument fails. Social Security Ruling 00–4p requires, in pertinent part, that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.[ FN1] Neither the DOT nor the VE ... evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00–4p, 2000 WL 1898704 (2000). Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the testimony of the VE and the DOT before relying on the VE to support a determination about whether the claimant can perform such work. In this case, the VE testified as to the jobs Plaintiff could perform based on the ALJ's hypothetical and stated that the sit/stand option "is based on my professional observance." (Tr. 34). The ALJ specifically asked if her testimony was consistent with that of the DOT to which the VE responded it was consistent. Accordingly, the ALJ elicited an explanation for which he found reasonable and reliable since the VE had "first-hand or professional knowledge." (Tr. 19). Additionally, the

argument fails because the DOT does not address the subject of sit/stand options so that it is not apparent that the testimony conflicts with the DOT. Thompson v. Astrue, supra *citing* Zblewski v. Astrue, 302 Fed. App'x 488, 494 (7th Cir. 2008)("Because the DOT does not address the subject of sit/stand options, it is not apparent that the [sit/stand] testimony conflicts with the DOT.").

### C. HYPOTHETICAL/MENTAL LIMITATIONS

Lastly, Plaintiff argues that the ALJ's hypothetical to the VE did not account for all of his mental functioning limitations. Specifically, Plaintiff asserts the hypothetical did not account for his moderate limitations in concentration, persistence or pace. Defendant argues the ALJ's hypothetical accounted for all of Plaintiff's credible limitations in mental functioning.

In the decision with regard to the RFC, the ALJ found the following:

> I find the claimant suffers from a bipolar disorder, which is a severe impairment expected to cause some limitations, but not entirely preclude work. The evidence reveals that the claimant has a history of treatment for this condition from June 2003 to November 2005; however, since his alleged onset date of May 24, 2007, he has sought minimal treatment. A report from Dr. Joe Hendrix dated January 24, 2008, reveals that the claimant scored 30 out of 30 or normal on the mental status examination and was diagnosed with bipolar by history with no follow-up treatment in the record. Upon consultative examination by Dr. James Way in October 2008, the claimant reported a history of a bipolar disorder. Although found to have depressed mood and restricted affect, Dr. Way noted that the claimant was alert, oriented, responsive, cooperative and attentive. There was no evidence of hallucinations, delusions or other thought disturbances and his thought process was rational, coherent and goal-directed. The claimant was able to recall three of three words immediately and after a five minute interval; name the current President and his immediate predecessor; spell the word: " world" forwards and backwards; and recite six digits forward and four backwards. He provided adequate response to three of five items measuring abstract reasoning processes and he was able to provide adequate responses to items measuring social comprehension and judgment. Dr. Way reported

> that the claimant had the skills to initiate and perform basic self-care tasks and other activities of daily living; understand the spoken word and avoid common physical dangers; and maintain intellectual skills to learn and carry out a variety of occupational tasks. Nevertheless, given the claimant's history of a bipolar disorder, in addition to his complaints of physical pain, I have limited the claimant to simple unskilled work with only occasional interaction with the public and co-workers and no quotas or production work. I find that these limitations adequately accommodate his mental condition.

(Tr. 17).

The ALJ found Plaintiff does not have a mental impairment that meets or medically meet a listing. However, the ALJ found Plaintiff has moderate restrictions in activities of daily living and mild difficulties in social functioning. With regard to concentration, persistence or pace, the ALJ concluded as follows:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties given that his mental impairment would likely cause some concentration deficits; however, during examination in October 2008, the claimant was able to recall three of three words immediately and at a five minute interval; name the current President and his immediate predecessor; spell the word "world" forwards and backwards; and recite six digits forward and four backward. Further, in January 2008, the claimant reported that he was able to pay bills.

(Tr. 13).

The ALJ further noted the following:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of impairments (SSR 97-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitations I have found in the "paragraph B" mental function analysis.

(Tr. 14).

Accordingly, at step three of the sequential evaluation process, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, or pace. However, at steps four and five, the ALJ found that Plaintiff had the mental residual functional capacity to perform simple, unskilled work with only occasional interaction with the public and co-workers and no quotas or production work. (Tr. 14). Based on the evidence the ALJ found credible, he presented a hypothetical to the VE as follows:

> If you were to assume that you had a person similar in age, education and prior work experience as the claimant, and that person was limited to sedentary work with an option to sit or stand at will, only occasional interaction with the general public and coworkers, simple, repetitive work with no quotas or production requirements, would that person be able to do the past prior work of the claimant?

(Tr. 33).

Based on the hypothetical presented by the ALJ to the VE pursuant to the RFC, the VE named several jobs the Plaintiff could perform. In Johnson v. Barnhart, 434 F.3d 650 (4th Cir.2005), the Fourth Circuit held that a hypothetical question is unimpeachable if it "adequately reflect[s]" a residual functional capacity for which the ALJ had sufficient evidence. See id. at 659 (emphasis added). In this case, the ALJ asked the VE to assume a person who had " . . . only occasional interaction with the general public and coworkers, *simple*, repetitive work with no quotas or production requirements. . ." (Tr. 33, emphasis added). The ALJ represented his finding that Plaintiff had "moderate" limitations in concentration, persistence, or pace in his RFC determination and hypothetical question to the VE by finding that Plaintiff was limited to "simple, repetitive work with no quotas or production requirements." (Tr. 33). See Lawson v. Astrue, 2011 WL 4502026 (July 29, 2011) *quoting* Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir.2008) (a

limitation to simple tasks adequately captures moderate limitations in concentration, persistence, or pace). Thus, the ALJ's hypothetical question fairly conveyed Plaintiff's functional capacity to the VE. A hypothetical posed to the expert need not reflect the RFC finding in the ALJ's decision with explicit precision in order to fairly set out a claimant's impairments. Rather, the hypothetical must "adequately reflect" the RFC for which the ALJ had sufficient evidence. Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir.2006), *quoting* Johnson v. Barnhart, 434 F.3d 650 (4th Cir.2005). Because the undersigned finds that the ALJ's RFC determination is supported by substantial evidence and because the challenged hypothetical question merely incorporated that determination, the ALJ committed no error and the argument fails.

## IV. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court recommends that the Commissioner's decision be AFFIRMED.

Respectfully Submitted,

                                                      s/Thomas E. Rogers, III
                                                      Thomas E. Rogers, III
                                                      United States Magistrate Judge

December 15, 2011
Florence, South Carolina