**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| William D. Pierpaoli           ) | C/A No. 4:10-2401-CMC-TER |
|                                )                | |
|         Plaintiff,             ) | |
|             v.                 ) | **ORDER** |
|                                )                | |
| Michael J. Astrue,             ) | |
| Commissioner of Social Security Administration,  ) | |
|                                )                | |
|         Defendant.             ) | |
| _____) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C. The Report, filed on December 15, 2011, recommends that the decision of the Commissioner be affirmed. Dkt. No. 19. On January 13, 2012, Plaintiff filed objections to the Report. Dkt. No. 24. On January 24, 2012, the Commissioner filed a response to Plaintiff's objections. Dkt. No. 27. For the reasons stated below, the court adopts the Report and affirms the decision of the Commissioner.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject,

1

or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## BACKGROUND

Plaintiff applied for SSI and DIB, alleging disability as of May 24, 2007, due to a broken femur as a result of an automobile accident, an ACL replacement, back pain, and bipolar disorder. The ALJ conducted a hearing on February 24, 2010 and issued a decision on April 23, 2010, finding that Plaintiff was not disabled. On July 20, 2010, the Appeals Council denied Plaintiff's request for review. Plaintiff filed this action on September 14, 2010. Dkt. No. 1.

**DISCUSSION**

The Magistrate Judge recommends that the court affirm the Commissioner's decision because it is supported by substantial evidence. Plaintiff objects to the Report, arguing that the Magistrate Judge erred in finding that (1) substantial evidence supports the ALJ's credibility determination; (2) the ALJ's hypothetical to the vocational expert ("VE") was sufficient with regard to a sit/stand option; (3) the ALJ reasonably relied on the VE's response to the hypothetical; and (4) the hypothetical reasonably conveyed Plaintiff's mental limitations. Dkt. No. 24.

**Credibility.** The ALJ found Plaintiff's testimony that his condition was worsening inconsistent with the treatment records. Tr. 15. The Magistrate Judge found that "the ALJ conducted the proper credibility analysis and cited substantial evidence to support his findings that Plaintiff's subjective complaints were not entirely credible." Dkt. No. 19 at 8. Plaintiff argues that the ALJ's finding that the evidence revealed that Plaintiff "was making slow, but steady progress" is not supported by substantial evidence. Dkt. No. 24 at 2. According to Plaintiff, the ALJ focused on evidence from a time period "where [Plaintiff's] condition improved for a short period of time" and that other medical evidence showed that Plaintiff's condition was worsening. *Id.*

Plaintiff argues that the ALJ ignored evidence of "final visits and end results" concerning Plaintiff's knee and back conditions. Dkt. No. 24 at 2. Most of the evidence that Plaintiff cites in an effort to show that the ALJ ignored later records was actually cited by the ALJ. For example, Plaintiff suggests that the ALJ ignored Dr. Colbath's notes dated July 1, 2009 and Dr. Kumar's report dated June 4, 2008. *Id.* The ALJ specifically discussed these records in his decision, indicating that he had reviewed them. Plaintiff also argues that the ALJ ignored Dr. Highsmith's opinion dated October 19, 2009, that Plaintiff had significant back problems as seen on an MRI.

However, the ALJ specifically described this opinion. Tr. 17. The court agrees with the Report that the ALJ adequately discussed and described the medical records in this case, and that the ALJ did not ignore specific time periods.

Plaintiff also argues that the ALJ erred in implying that Plaintiff consistently reported low levels of pain. Dkt. No. 24 at 3. The ALJ, when discounting Plaintiff's testimony that his pain level was a ten out of ten, cited to medical records which identify that Plaintiff reported low levels of pain in December 2008, March 2009, June 2009, and July 2009. Tr. 15. The ALJ then acknowledged that the highest pain level Plaintiff reported prior to the hearing was an eight out of ten on September 2009. *Id.* Based on the conflicting self-reported levels of pain, the ALJ concluded that "some of the testimony at the hearing is inconsistent with the treatment records." *Id.* Plaintiff contends that he reported a pain level of nine out of ten on August 26, 2005. Dkt. No. 24 at 3. Plaintiff, however, alleges a disability onset date on May 24, 2007. The court finds that Plaintiff's pain complaints in 2005 are not probative of his pain levels after the alleged onset date. Plaintiff also cites to a September 9, 2009, report of a pain level of nine out of ten, which was cited by the ALJ. Finally, Plaintiff cites to two reports in May 2009 when Plaintiff reported a pain level of six out of ten. The ALJ also addressed these reports in his decision.[1] Tr. 16 (discussing "[p]ain management records

---

[1] These records show that Plaintiff presented to a pain specialist on May 8, 2009 with pain described as a six. Tr. 407. As a result of his pain, Plaintiff received a lumbar epidural steroid injection on May 12, 2009. Tr. 406. On June 16, 2009, Plaintiff reported to the pain specialist that he received pain relief from the last steroid injection and his pain was reduced to a two out of ten. Tr. 404. However, on that same date, which was the date of his appointment for his next injection, Plaintiff reported a pain level of five. *Id.* The court is unaware of any evidence that Plaintiff received any lumbar epidural steroid injections after June 16, 2009. Tr. 403-04. On September 9, 2009, Plaintiff reported that he had experienced no relief from several epidural steroid injections and that he wanted to discuss other treatment options. Tr. 403. These records indicate that Plaintiff stopped treatment with lumbar epidural steroid injections despite initial reports that they were successful at relieving his pain. The ALJ thoroughly discussed Plaintiff's treatment by epidural

4

show that the claimant received epidural steroid injections for his back pain on May 12, 2009 and June 10, 2009 "[2] and acknowledging Plaintiff's report that he received pain relief from the injection). As explained in the Report (Dkt. No. 19 at 7-8), substantial evidence supports the ALJ's finding that Plaintiff's testimony that he was experiencing pain at a level of ten out of ten was inconsistent with the medical records.

Plaintiff contends that the ALJ erred in finding that the medical evidence did not support Plaintiff's testimony that he experienced side effects from morphine. Plaintiff testified that taking morphine puts him to sleep (Tr. 29) and it "makes me not function" (Tr. 30).[3] He later stated that, "I don't leave the house and I can't drive because with being on morphine it would be a DUI and I can't stand to even ride." Tr. 31. First, the ALJ did not limit his finding to morphine, but rather to side effects from his "medications." Tr. 15. Second, the ALJ did not find that Plaintiff did not experience side effects, but rather that the medical records did not corroborate Plaintiff's allegations of "significant side effects from the use of medications (sleeping all day)." *Id.*

There is substantial evidence to support the ALJ's finding that other evidence did not corroborate Plaintiff's testimony that his medications were causing significant side effects that required him to sleep all day. Plaintiff has not cited to treatment notes or other medical evidence that show Plaintiff complained of side effects of his medications or sought alternative treatment because of his medications' side effects. The only evidence that Plaintiff cites to suggest any side

---

steroid injections. Tr. 16-17.

[2] The reference to June 10, 2009 appears to be a typographical error because the report cited to is dated June 16, 2009.

[3] He also testified that because of his pain, he does not sleep. Tr. 28.

effects of his medications is found in a mental status evaluation. This report notes that Plaintiff is "unable to drive secondary to effects of medication regime." Tr. 385.

The ALJ also found that, although Plaintiff alleged extreme inactivity, such as sleeping all day, the medical evidence did not show any signs of muscle atrophy or other indications to support his allegation. Tr. 15. The ALJ noted that Plaintiff reported in January 2008 and July 2008 that he drove occasionally, and reported in October 2008 that he was able to do some cooking and cleaning. Tr. 15-16. The ALJ also cited to records which indicate Plaintiff can "attend to his personal care." Tr. 16. The court concludes that the ALJ's finding that Plaintiff's daily activities were not as extremely limited as he claimed is supported by substantial evidence. After reviewing Plaintiff's objections with respect to the ALJ's credibility determination, the court agrees with the Report that the ALJ's credibility determination is supported by substantial evidence.[4]

**Frequency of Sit/Stand Option.** Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's hypothetical to the VE regarding Plaintiff's need to alternate between sitting and standing was sufficient. Dkt. No. 24 at 5-6. In the ALJ's hypothetical, the ALJ limited Plaintiff's work to "sedentary work with an option to sit or stand at will." Tr. 33. According to Plaintiff, the ALJ failed to comply with SSR 96-9p by not specifying the frequency of the need to change Plaintiff's sit/stand option, and the VE's testimony is, therefore, unreliable. The Report adequately addresses Plaintiff's objections. *See* Dkt. No. 19 at 11-12 (citing cases which support conclusion that a VE understands

---

[4] Plaintiff also objects to the ALJ's statement that "[t]here is evidence of non-compliance in the record." Dkt. No. 24 at 4. The ALJ noted that treatment records showed that Plaintiff continued to smoke through May 2008 despite numerous directions to stop smoking. Tr. 15. The court does not find that the ALJ relied on this fact of "non-compliance." Although it was mentioned, the ALJ did not use it as a basis to deny disability benefits. The court, therefore, rejects Plaintiff's argument that the ALJ erred by including this statement.

6

that an "at will sit/stand option" means that Plaintiff would have the flexibility to sit or stand as needed). As the Report explains, "at-will" necessarily implies that it is as needed and no further specificity is required. The court finds that "an option to sit or stand at will" is the most flexible sit/stand option.[5] The court, therefore, concludes that the ALJ did not err by including a limitation "to sedentary work with an option to sit or stand at will."

**Conflict Between DOT and VE's Testimony.** Plaintiff objects to the Magistrate Judge's conclusion that the VE can testify that, based on her professional experience, Plaintiff could perform the jobs of machine tender, surveillance system monitor, and inspector even though the Dictionary of Occupational Titles ("DOT") does not provide for a sit/stand option. SSR 00-4p provides that an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]." First, as the Report correctly explains, the DOT does not address the subject of sit/stand options for any job and it is unclear that there is a conflict between the VE's testimony and the DOT. *See, e.g.*, *Slavicek v. Astrue*, 2010 WL 5421444 (D. Minn. Dec. 2, 2010) ("The VE's testimony does not conflict with the DOT, the DOT simply doesn't address the issue of a sit/stand option."). Even assuming there was a conflict between the VE and the DOT, the ALJ may rely on the VE's professional experience to resolve a conflict.

The ALJ asked the VE if her testimony was consistent with the DOT and the VE said it was consistent, but acknowledged that the DOT does not provide for a sit/stand option. Tr. 34. The VE then testified that Plaintiff would be able to perform the aforementioned jobs with a sit/stand option

---

[5] Plaintiff suggests that his sedentary occupation base would be further eroded if the ALJ made a frequency finding. However, because an at-will sit/stand option gives an employee the discretion to sit or stand as necessary, it is a greater limitation than a specified frequency requirement. For example, had the ALJ provided a hypothetical that allowed Plaintiff to alternate between sitting and standing every hour, there could conceivably be a larger occupation base, i.e., more jobs available to Plaintiff.

7

based on her "professional observance." *Id.* Plaintiff argues that the ALJ should have inquired as to how she obtained her professional knowledge, but fails to cite any case law or regulation requiring an ALJ to ask a VE for more information about professional experience after the claimant's attorney has expressed that he has no objections to the VE's qualifications (Tr. 33).[6] The court finds that the ALJ did not err in relying on VE testimony that Plaintiff could perform certain jobs with an at-will sit/stand option even though the DOT does not provide for a sit/stand option.

**Hypothetical Conveyed Mental Limitations.** Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's hypothetical to the VE adequately included Plaintiff's mental limitations. Dkt. No. 24 at 7-8. According to Plaintiff, his "moderate difficulties" with regard to concentration, persistence, or pace were not included in the ALJ's hypothetical, which limited Plaintiff to sedentary work with only occasional interaction with the general public and coworkers, and only simple, repetitive work with no quotas or production requirements. When the ALJ discussed whether Plaintiff's mental impairments met the listed impairments in Step Three, the ALJ acknowledged that Plaintiff "has moderate difficulties" that "would likely cause some concentration deficits." Tr. 13. However, the ALJ explained that Plaintiff "was able to recall three of three words immediately and at a five minute interval; name the current President and his immediate predecessor; spell the word 'world' forwards and backwards; and recite six digits forward and four backward." *Id.* When determining Plaintiff's RFC at Step Five, the ALJ adequately explained that Plaintiff's bipolar disorder, for which Plaintiff had only sought minimal treatment since his alleged disability onset

---

[6] Courts have held that professional experience or knowledge is a reasonable explanation under these circumstances. *See, e.g.*, *Thornsberry v. Astrue,* C.A. No. 4:08-4075, 2010 WL 146483 (D.S.C. Jan. 12, 2010) (finding no error when VE testified that based on his professional knowledge, claimant could work certain jobs although the DOT did not provide sit/stand option); *Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *27 (E.D.N.C. Mar. 24, 2009) (vocational expert provided reasonable explanation, for purposes of SSR 00-4p, when he stated that the cited jobs would provide sit/stand option based on his professional experience).

8

date, is "expected to cause some limitations, but not entirely preclude work." Tr. 17.

Plaintiff's argument is essentially that the ALJ's Step Three finding that Plaintiff had "moderate difficulties" with concentration should have been included in his Step Five RFC.[7] Substantial evidence supports the ALJ's RFC determination that Plaintiff's mental limitations would limit him to simple unskilled work with no quotas or production work. For the reasons stated in the Report (Dkt. No. 19 at 13-16), Plaintiff's mental limitations were properly accounted for in the ALJ's RFC determination, and the RFC determination is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 30, 2012

---

[7] The Report noted that the ALJ explained the differences between Step Three and Step Five:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of impairments (SSR 97-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitations I have found in the "paragraph B" mental function analysis.

Dkt. No. 19 at 14 (citing Tr. 14).